IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JUSTIN BENTZ, | ) | CASE NO. 3:19 CV 1203 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE SARA LIOI |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| LYNEAL WAINWRIGHT, Warden | ) | JONATHAN D. GREENBERG |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court is the Petition of  Justin Bentz ("Bentz" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Bentz is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v. Bentz*, No. CR 2015 024. For the following reasons, the undersigned recommends that the Petition be DISMISSED.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts underlying Bentz's conviction as follows:

> {¶ 2} This case stems from allegations that Bentz, who was a police officer for the city of Lima, engaged in nonconsensual sex with 16  year  old K.A. on June 11, 2015. Bentz met K.A. through Kelli A. ("Kelli"), the girlfriend of Bentz's roommate, David Irwin ("Irwin"). K.A., Kelli's sister, was staying the night at the residence Irwin and Kelli shared with Bentz. On July 16, 2015, the Allen County Grand Jury indicted Bentz on: Count One of rape in violation of R.C. 2907.02(A)(2), a first-degree felony; Count Two of kidnapping in violation of R.C. 2905.01(A)(2), a first-degree felony; Count Three of sexual battery in violation of R.C. 2907.03(A)(2), a third-degree felony; Count Four of sexual battery in violation of R.C. 2907.03(A)(13), a third-degree felony; and Count Five of offenses involving underage persons in violation of R.C. 4301.69(A), a first-degree misdemeanor. (Doc. No. 3). Bentz pled not guilty to the counts of the indictment on July 23, 2015. (Doc. No. 221).

> {¶ 3} On July 20, 2015, Bentz filed a motion for a bill of particulars, which the State provided on August 11, 2015. (Doc. Nos. 8, 17). The State filed an amended bill of particulars on November 5, 2015. (Doc. No. 119).

> {¶ 4} On January 21, 2016, Bentz filed a motion to dismiss Count Four of the indictment. (Doc. No. 184). In that motion, Bentz argued that (1) he was not a "peace  officer"  at  the  time  of  the  alleged  offense  or  (2)  R.C. 2907.03(A)(13) is unconstitutional. (*Id.*). On January 21, 2016, Bentz filed a motion *in limine* to exclude the testimony of the Sexual Assault Nurse Examiner ("SANE"), Ronda Norris ("Norris"). (Doc. No. 185). The State filed memorandums in opposition to Bentz's motion to dismiss and motion *in limine* on February 4, 2016. (Doc. Nos. 187, 188).

> {¶ 5} On February 8, 2016, the trial court denied Bentz's motion to dismiss and motion *in limine*. (Doc. Nos. 191, 192).

> {¶ 6} The case proceeded to a bench trial on February 16 and 17, 2016. (Feb.

2

16 17, 2016 Tr., Vol. I, at 1); (Feb. 16 17, 2016 Tr., Vol. II, at 309). The trial court found Bentz guilty of all of the counts of the indictment on February 23, 2016. (Doc. No. 221); (Feb. 23, 2016 Tr. at 5 7). The trial court filed its "judgment entry of conviction" on February 24, 2016. (Doc. No. 221).

{¶ 7} On April 8, 2016, the State filed a motion conceding that the rape and sexual-battery offenses of which Bentz was found guilty are allied offenses of similar import and subject to merger. (Doc. No. 225). The State indicated in its motion that it elected to pursue the offense of rape for purposes of conviction and sentencing. (*Id*.). Bentz filed a memorandum in opposition to the State's motion arguing that the kidnapping offense of which he was found guilty is an allied offense of similar import to the rape and sexual-battery offenses of which he was found guilty. (Doc. No. 226).

{¶ 8} The trial court held a sentencing and a sex-offender registration hearing on April 14, 2016. (Apr. 14, 2016 Tr. at 1, 31). The trial court agreed with the State's argument as to merger and merged Counts One, Three, and Four, and denied Bentz's motion requesting that Count Two be merged with those counts. (*Id*. at 24). The trial court sentenced Bentz to ten years in prison on Count One, four years in prison on Count Two, and 60 days in jail on Count Five. (*Id*. at 25 28); (Doc. No. 232). The trial court ordered that Bentz serve the terms for Counts One and Two consecutively, and ordered that Bentz serve the term for Count Five concurrently to Counts One and Two, for an aggregate sentence of 14 years. (*Id*. at 28 29); (*Id*.). The trial court also classified Bentz as a Tier III sex offender. (Apr. 14, 2016 Tr. at 31). The trial court filed its judgment entries of sentence and sex-offender classification on April 14, 2016. (Doc. Nos. 231, 232).

*State v. Bentz,* 93 N.E.3d 358, 363 64 (Ohio App. 2017).

## II. Procedural History

A.      **Trial Court Proceedings**

On July 16, 2015, an Allen County Grand Jury indicated Bentz on the following charges:

one count of Rape, in violation of R.C. 2907.02(A)(2); one count of Kidnapping, in violation of R.C.

2905.01(A)(2); one count of Sexual Battery, in violation of R.C. 2907.03(A)(2); one count of Sexual

Battery, in violation of R.C. 2907.03(A)(13); and one count of Offenses Involving Underage

Persons, in violation of R.C. 4301.69(A). (Exhibit 1.) All counts involved the same victim. Bentz,

3

through counsel, entered a plea of not guilty to the indictment and the case was set for trial.

On January 21, 2016, Bentz moved to dismiss the charge of sexual battery pursuant to R.C. 2907.03(A)(13) as unconstitutional and argued that he was not a "peace office" at the time of the incident. (Doc. No. 5-1 at Ex. 2). The State filed a motion to dismiss in response.  (*Id*. at Ex 3.) On February 8, 2016, the trial court overruled the motion to dismiss.  (*Id*. at Ex. 4.) Also on February 8, 2016, Bentz waived his right to a jury trial.  (*Id*. at Ex. 5.)

The case proceeded to a bench trial and on February 23, 2016, the trial court found Bentz guilty as charged in the indictment.  (*Id*. at Ex. 6.)

For sentencing purposes, the court merged the rape and sexual battery counts and the State elected to proceed on the count of rape. Bentz was ordered to serve ten years incarceration for rape and a term of four years for kidnapping, to be served consecutively. The court imposed a sentence of sixty days for his conviction for offenses involving underage persons, to be served concurrently with his other sentences. Bentz was also classified as a Tier III sex offender. The sentencing entry was journalized on April 14, 2016.  (*Id*. at Ex. 7.)

## B.    Direct Appeal

Bentz, through counsel, filed a timely notice of appeal to the Third District Court of Appeals, Allen County.  (*Id*. at Ex. 8.)   In his appellate brief, he raised the following assignments of error:

I.     The trial court erred when it convicted the Defendant for violating Ohio Revised Code Section 2907.03(A)(13).

II.    The trial court erred when it considered irrelevant evidence in determining the credibility of the Defendant.

III.   The trial court erred when it convicted the Defendant of Kidnapping when there was no evidence of force or threat of force or flight.

IV.    The trial court erred when it convicted the Defendant of all charges

4

except R.C. 4301.69(A) against the manifest weight of the evidence.

V.     The trial court erred when it convicted the Defendant of all charges
       except R.C. 4301.69(A) despite the ineffective assistance of counsel for
       the Defendant.

(*Id*. at Ex. 9.)  The State filed a brief in response.  (*Id*. at Ex. 10.)  Bentz filed a Reply.  (*Id*. at Ex.

11.)

On June 26, 2017, the Court of Appeals sustained the first and third assignments of error,

reversing the trial court's judgment as to those convictions and remanding the case for further

proceedings. The remaining assignments of error were overruled. (*Id*. at Ex. 12.)

Bentz, through counsel, filed a timely notice of appeal to the Ohio Supreme Court.  (*Id*. at

Ex. 13.)  Bentz did not identify his specific propositions of law in his memorandum in support of

jurisdiction, but argued the same issues as those set forth in this second and fourth assignments of

error in his appellate brief. (*Id*. at Ex. 14.)

On February 28, 2018, the Ohio Supreme Court declined jurisdiction pursuant the

S.Ct.Prac.R. 7.08(B)(4). (*Id*. at Ex. 15.)

## C.     Remand to Trial Court

On September 27, 2017, pursuant to the Court of Appeals opinion and judgment entry filed

June 26, 2017, the trial court vacated Bentz's conviction for kidnapping and four-year prison

sentence and ordered that Bentz serve a prison sentence of ten years for his conviction for rape. (*Id*.

at Ex. 16.)

## D.     Federal Habeas Petition

On May 27, 2019, Bentz, represented by counsel, filed a Petition for Writ of Habeas Corpus

in this Court and asserted the following ground for relief:

> **GROUND ONE**:  Petitioner was deprived the effective assistance of counsel when he failed to prevent leading testimony.
>
>> **Supporting Facts**:    Trial counsel failed to object when the prosecutor used leading questions throughout the victim's testimony. The Petitioner was prejudiced because the victim made multiple inconsistent statements regarding her sobriety and her consent. Coupled with the unreasonableness of some of her statements, the judge's improper statements and the court of appeals reversal, there is a reasonable probability the result would have been different.

(Doc. 1.)

On October 10, 2019, Warden Lyneal Wainwright ("Respondent") filed his Return of Writ.

(Doc. No. 5.)  Bentz filed a Traverse on February 13, 2020.  (Doc. No. 9.)

### III.  Exhaustion

**A.    Legal Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus

proceedings.  *See* 28 U.S.C. § 2254(b), (c).  This requirement is satisfied "when the highest court in

the state in which the petitioner was convicted has been given a full and fair opportunity to rule on

the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

**B.    Application to Petitioner**

In this case, it is undisputed that Bentz satisfied the exhaustion of remedies requirement at

the state court level in order to file his habeas corpus relief petition.  (Doc. No. 5 at 6; Doc. No. 9

at 8.)  Therefore, the sole ground of his petition is properly before this Court.

6

## IV.  Review on the Merits

**A.      Legal Standard**

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court.  *See Parker v. Matthews*, 567 U.S. 37, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v. Warren,* 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court."  *Parker*, 567 U.S. at 48-49; *Howes v. Walker*, 567 U.S. 901, 132 S.Ct. 2741, 183 L.Ed.2d 612 (2012).  *See also Lopez v. Smith*, 574 U.S. 1, 7, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.' " (quoting

7

*Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013))).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id. See also Shimel*, 838 F.3d at 695. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,* 529 U.S. at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 F. App'x 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id.* at 786 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 785. The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme

malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id*. (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786 87.  This is a very high standard, which the Supreme Court readily acknowledged. *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.").

**B.       Application to Petitioner**

The sole ground of Bentz's Petition asserts that his trial counsel was ineffective because the trial counsel failed to object when the prosecutor used leading questions through the victim's testimony. He argues this caused prejudice "because the victim made multiple inconsistent statements regarding her sobriety and her consent," and asserts that, "coupled with the unreasonableness of some of her statements, the judge's improper statements and the court of appeals reversal, there is a reasonable probability the result would have been different."  (Doc. No. 9 at 9.) Bentz further asserts that the state appellate court's decision was contrary to or an unreasonable application of the applicable Supreme Court precedent, *Strickland v. Washington*, 466 U.S. 669 (1984).  (*Id*. at 10.)

The Respondent asserts that the ruling of the state appellate court was a reasonable adjudication of Bentz's claim consistent with established Supreme Court precedent.  (Doc. No. 5 at 8.)  He further argues that the performance of Bentz's trial counsel was not deficient, and the actions challenged by Bentz in this petition are tactical decisions, which is outside the realm of habeas corpus challenge and inquiry.  (*Id*. at 9-13.)

The state appellate court addressed this assignment of error as follows:

{¶ 138} In his fifth assignment of error, Bentz argues that his trial counsel was ineffective. In particular, he contends his trial counsel was ineffective for failing to object to the State's asking leading questions of K.A. during direct examination.

{¶ 139} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St. 3d 303, 306, 750 N.E.2d 148 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 687, 104 S.Ct. 2052. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675, 693 N.E.2d 267 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St. 3d 136, 141 42, 538 N.E.2d 373 (1989), quoting *State v. Lytle*, 48 Ohio St.2d 391, 396, 358 N.E.2d 623 (1976), *vacated in part on other grounds*, 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154 (1978).

{¶ 140} "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *State v. Liles*, 3d Dist. Allen No. 1-13-04, 2014-Ohio-259, 2014 WL 296002, ¶ 48, quoting Bradley at 142, 538 N.E.2d 373, citing Strickland at 691, 104 S.Ct. 2052. " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id*., quoting *Bradley* at 142, 538 N.E.2d 373 and citing *Strickland* at 694, 104 S.Ct. 2052.

{¶ 141} As we explained in Bentz's second assignment of error, "this was a bench trial, and in a criminal case, a presumption exists that the trial court considers only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary." *State v. Alghaben*, 8th Dist. Cuyahoga No. 86044, 2005-Ohio-6490, 2005 WL 3315030, ¶ 29, citing *State v. Thomas*, 97 Ohio St.3d 309, 2002-Ohio-6624, 779 N.E.2d 1017, ¶ 25. The Supreme Court of Ohio "has held that 'it is within the trial court's discretion to allow leading questions on direct examination' and that trial counsel's failure to object does not constitute ineffective assistance of counsel." *State v. Ocasio*, 9th Dist. Lorain No. 15CA010773, 2016-Ohio-4686, 2016 WL 3570378, ¶ 37, quoting *State v. Jackson*, 92 Ohio St.3d 436, 449, 751 N.E.2d 946 (2001), and citing *State v. Kiley*, 9th Dist. Lorain No.

10

10CA009757, 2011-Ohio-1156, 2011 WL 860476, ¶ 4. Likewise, Evidence Rule 611(C), which "provides that '[l]eading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony,' " "does not prohibit the use of leading questions." (Emphasis added.) *State v. Stairhime*, 3d Dist. Defiance No. 4-13-06, 2014-Ohio-1791, 2014 WL 1692781, ¶ 46; *Alghaben* at ¶ 29. "Finally, the Supreme Court of Ohio has recognized that declining to interrupt the prosecutor's argument with objections, or failing to object to certain evidence, is not deficient performance, especially in a bench trial." *Alghaben* at ¶ 29, citing *State v. Keene*, 81 Ohio St.3d 646, 668, 693 N.E.2d 246 (1998).

{¶ 142} "Clearly, some witnesses testify better than others; in other words, some will describe what happened with very little prompting by the prosecutor, while others will require a little more effort." *Alghaben* at ¶ 30. Similar to *Alghaben*, Bentz's defense counsel objected to the prosecutor's use of leading questions, and the trial court admonished the prosecutor to "watch [his] leading questions." (Feb. 16  17, 2016 Tr., Vol. I, at 215). *Compare Alghaben* at ¶ 30. Based on our review of the record, the leading questions of the prosecutor to which Bentz insists that his trial counsel should have objected "were mostly eliciting routine or undisputed facts." *State v. Howard*, 2d Dist. Montgomery No. 23588, 2010-Ohio-5158, 2010 WL 4158507, ¶ 65. As in *Howard*, "[t]o the extent that the questions reached into the area of disputed or controversial facts, the information was already before the court." *Id.* Similarly, the "leading nature" of many of the prosecutor's questions served to streamline the questioning or to clarify K.A.'s testimony, and Bentz's trial counsel acknowledged that when he objected to the prosecutor's leading questions. *Id.* (*See also* Feb. 16  17, 2016 Tr., Vol. I, at 215). Because "the trial court can distinguish between what a witness actually testifies to and what the state tries to get the witness to say even when defense counsel failed to object," we cannot conclude that Bentz was prejudiced by the leading questions. *Alghaben* at ¶ 30. *See also Howard* at ¶ 65 ("this was a trial to the court, and the judge was certainly able to distinguish between leading questions and sworn testimony"). In other words, we cannot say that the result of Bentz's trial would have been different. Therefore, Bentz's trial counsel was not ineffective for failing to object to the State's asking leading questions of K.A. during direct examination.

*State v. Bentz*, 93 N.E.3d at 394  96.

In assessing claims of ineffective assistance of counsel, courts apply the familiar standard of

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1998), which requires a

petitioner to demonstrate both that his counsel's performance was deficient, and that the allegedly

ineffective assistance caused him prejudice:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687.

Where, as here, a state court correctly identifies *Strickland* as the standard for assessing a petitioner's ineffective assistance claim, in order for the petitioner to receive habeas relief, the state court's ruling must be an unreasonable application of the *Strickland* standard. *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009) ("The question is not whether a federal court believes the state court's determination under *Strickland* was incorrect but whether that determination was unreasonable a substantially higher threshold.") (internal quotation marks omitted). When reviewing a state court's ruling on an ineffective assistance of counsel claim, federal habeas courts must employ "a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 134 S.Ct. 10, 13, 187 L.Ed.2d 348 (2013); *see also Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011) ("Our review of the [state court's] decision is thus doubly deferential. We take a highly deferential look at counsel's performance through the deferential lens of § 2254(d).") (internal citations and quotation marks omitted).

The United States Supreme Court has emphasized that, in determining whether counsel performed deficiently under *Strickland*, "[w]e begin with the premise that 'under the circumstances,

12

the challenged action[s] might be considered sound trial strategy.'" *Pinholster*, 131 S.Ct. at 1404 (quoting *Strickland*, 466 U.S. at 689).   Indeed, *Strickland* commands reviewing courts to "affirmatively entertain the range of possible 'reasons [defense] counsel may have had for proceeding as they did,'" *Pinholster*, 131 S.Ct. at 1407, and "indulge [the] strong presumption" that counsel "made all significant decisions in the exercise of reasonable professional judgment." *Strickland,* 466 U.S. at 689-90, 692.[1]  *See also Holmes v. Goodrich*, No. 1:13CV421, 2015 WL 127925 at *16 (N.D. Ohio Jan. 8, 2015) ("Courts must generally refrain from second-guessing trial counsel's strategy, even where that strategy is questionable, and appellate counsel claims that a different strategy would have been more effective.")  The mere fact that a trial strategy was unsuccessful is not sufficient to support a conclusion that trial counsel's performance was deficient. *See Kelly v. Lazaroff*, No. 5:14CV1217, 2015 WL 4546996 at *11 (N.D. Ohio July 28, 2015).  *See also State v. Conway*, 848 N.E.2d 810, 832, 109 Ohio St. 3d 412, 432  33 (Ohio 2006) ("That this strategy was unsuccessful and the jury ultimately found Conway guilty . . . is not a basis for finding ineffective assistance of counsel. Trial counsel's strategic choices must be accorded deference and cannot be examined through the distorting effect of hindsight").

---

[1]     Like federal law, Ohio law regarding ineffective assistance claims requires reviewing courts to be highly deferential of trial counsel's strategic decisions.  *See State v. Carter*, 651 N.E.2d 965, 977, 72 Ohio St. 3d 545, 558 (Ohio 1995) ("Judicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel. To justify a finding of ineffective assistance of counsel, the appellant must overcome a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy."); *State v. Smith*, 731 N.E.2d 645, 652, 89 Ohio St. 3d 323, 328 (Ohio 2000) ("Yet, even if we viewed counsel's trial strategy as questionable, such a strategy should not compel us to find ineffective assistance of counsel. In these situations, we normally defer to counsel's judgment.").

13

### 1.      Ineffectiveness

Bentz asserts his trial counsel was ineffective because he allowed the prosecutor to repeatedly ask leading questions of the victim.  Rule of Evidence 611(c) states that, "[l]eading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony." However, it is well-established that "the trial court has discretion to allow leading questions on direct examination." *State v. Thompson*, 23 N.E.3d 1096, 1135, 141 Ohio St. 3d 254, 285 (Ohio 2014); *citing State v. D'Ambrosio*, 616 N.E.2d 909, 914, 67 Ohio St. 3d 185, 190 (Ohio 1993).  Therefore, "the Ohio Supreme Court has held that the failure to object to leading questions does not constitute ineffective assistance of counsel."  *State v. Jefferson*, No. 2002 CA 26, 2002 WL 31647807 at *2 (Ohio Ct. App. Nov. 22. 2002), *citing State v. Jackson*,  751 N.E.2d 946, 92 Ohio St. 3d 436, 449 (Ohio 2001). This is so "because the failure of counsel to object may have been the result of trial strategy." *Id., see also Johnson v. Warden, Ross Corr. Inst*., No. 2:17-CV-0121, 2018 WL 388079 at *29 (S.D. Ohio Jan. 11, 2018), *report and recommendation adopted*, 2018 WL 3054669 (S.D. Ohio June 20, 2018).

Here, the state appellate court identified the applicable Supreme Court precedent, and applied that standard to determine that Bentz's trial counsel was not ineffective for failing to renew his objection when the prosecutor reverted to asking leading questions.  As the state appellate court explained, to prevail on a claim of ineffective assistance of counsel, Bentz must first overcome the strong presumption that his counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment.  *Strickland,* 466 U.S. at 687.  That task is compounded in this case by the fact that Bentz chose not to have his case heard by a jury.  Where a criminal case is tried by a judge, Ohio courts recognize "a presumption exists

14

that the trial court considers only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary." *State v. Alghaben,* No. 86044, 2005 WL 3315030 at *4 (Ohio Ct. App. Dec. 8, 2005), citing *State v. Thomas,* 779 N.E.2d 1017, 97 Ohio St. 3d 309 (Ohio 2002).  Therefore, it is an exercise of reasonable professional judgment for trial counsel to make the same assumption.

The trial transcript shows that Bentz's trial counsel objected after a long string of leading questions establishing that the victim had consumed alcohol with Bentz prior to the rape.  (Doc. 5-1, PageID# 608-11.)  The exchange was as follows:

Q:     Did you go into the kitchen?

A:     Yes.

Q:     And was Officer Bentz correct, that a shot was already poured and ready for you?

A:     Yes.

Q:     And did you consume it?

A:     Yes.

Q:     And what happened after that point?

A:     We went back into the living room to continue watching the movie.

Q:     Ok.  Was there any al . . . any alcohol consumption after that point?

A:     Yes.

Q:     And where did that occur, in the living room or the kitchen?

A:     It was in the kitchen.

Q:     And it was shortly after the first shot?

A:     Yes.

15

Q:      And whose idea was it to take a second shot?

A:      His.

Q:      By his, do you mean Officer Bentz?

A:      Yes.

Q:      And did he pour it again?

A:      Yes.

Q:      And did you go into the kitchen to consume it?

A:      Yes.

Q:      And do you recall if there were additional shots of alcohol?

A:      Wait, wait, what?

Q:      Do you recall if there were additional . . . more shots of alcohol -

A:      Oh, yeah.

Q:      Taken?

A:      Yeah.

Q:      And did you observe Officer Bentz consume alcohol with you?

A:      Yes.

Q:      And when he consumed alcohol did he just drink it or did he do anything else as a part of taking the shot of alcohol?

A:      He put salt on his hand and licked it off after.

Q:      Okay, and then he consumed the shots as well?

A:      Yes.

Q:      And at some point did you begin to feel the effects of alcohol?

A:      Yes.

16

Q:     And do you recall when you started to feel the effects of alcohol?

A:     Yes.

Q:     And after which shot?

A:     I started feeling it after the second one.  That's when it like . . . I ended up laying on the floor because I could not make my way to the living room.

Q:     Was that after the second shot of alcohol?

A:     Yes.

Q:     But did you continue to consume alcohol after that point?

A:     Yes.

Q:     And those were offered by Officer Bentz to you?

A:     Yes.

Q:     Was your vision affected by your alcohol?

A:     Yes.

Q:     In what way?

A:     I couldn't see.  I don't know.  Like that's the only thing I can describe it as, like it was very blurry.

Q:     Okay.

A:     Okay.

Q:     And did you experience blurry vision while you were still in the kitchen?

A:     Yes.

Q:     And did you remain on the floor for some period of time?

A:     Yes.

Q:     Was --

17

[Trial Counsel]:     Judge, I don't mind leading up to this point to get the evidence out, but can we let her testify?

The Court:     Watch your leading questions.

[Prosecutor]:   Okay.

(Doc. 5-1, PageID# 608-11.)  Bentz's trial counsel makes clear that he intentionally permitted the leading questions up to this point, and the judge issued a warning to the prosecutor.  However, after a period of more detailed answers, the pattern of leading questions and monosyllabic answers resumed:

Q:     When you were on his bed do you recall at that moment your pants were off?

A:     Yeah.

Q:     Were your underwear off as well?

A:     Yes.

Q:     And once your pants and underwear was off did anything else happen?

A:     Yes.

(Doc. 5-1, PageID# 614.)  Again, a period of more detailed answers was followed by a return to the pattern of leading questions and monosyllabic answers:

Q:     When he came into the room with the lotion did you feel as though you knew what he was attempting to do?

A:     Yes.

Q:     Is that when you said no?

A:     Yes.

Q:     Were you saying no to sexual activity?

A:     Yes.

18

Q:      When he was on top of you did you say no?

A:      Yes.

Q:      Did he, after that time, have sex with you?

A:      Yes.

(Doc. 5-1, PageID# 615-16.)

It is undisputed that Bentz's trial counsel never renewed his objection to these leading questions.  However, the state appellate court determined this was a tactical trial strategy consistent with reasonable professional judgment because at a bench trial, Bentz's trial counsel could rely on the judge's ability to identify and rely on only relevant, material, and competent evidence.  Further, as the state appellate court noted, " the 'leading nature' of many of the prosecutor's questions served to streamline the questioning or to clarify K.A.'s testimony," and Bentz's trial counsel could reasonably have determined that extending the victim's testimony, or requiring her to elaborate on her answers, was not in his client's best interest.  *State v. Bentz*, 93 N.E.3d at 396.

The state appellate court's determination is consistent with both the highly deferential standard articulated in *Strickland* and Ohio Supreme Court precedent recognizing that objections are discretionary.  The Ohio Supreme Court has made clear that "failing to object to certain evidence, was not deficient performance, especially in a bench trial."  *State v. Keene*, 693 N.E.2d 246, 264, 81 Ohio St. 3d 646, 668 (Ohio 1998); *see also State v. Fears*, 715 N.E.2d 136, 153, 86 Ohio St. 3d 329, 347 (Ohio 1999) ("[t]he failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.") The state appellate court reasonably applied the relevant, applicable law, and this Court therefore should defer to the state appellate court's determination that the performance of Bentz's trial counsel satisfied *Strickland*'s deferential standard.

19

### 2.     Prejudice

However, assuming, *arguendo*, that Bentz's trial counsel's performance was incompetent, he also fails to establish that they prejudiced Bentz's case.  The state appellate court also addressed this issue, explaining "Because 'the trial court can distinguish between what a witness actually testifies to and what the state tries to get the witness to say even when defense counsel failed to object,' we cannot conclude that Bentz was prejudiced by the leading questions."  *State v. Bentz*, 93 N.E.3d at 396, citing *Alghaben*, 2005 WL 3315030 at *4.  Further, the record shows that Bentz's trial counsel challenged the victim's direct testimony with a robust cross-examination.  As the United States Supreme Court explained, a petitioner is not entitled to a presumption of prejudice unless it can be said that his counsel "fail[ed] meaningfully to oppose the prosecution's case." *Lundgren v. Mitchell*, 440 F.3d 754, 775 (6th Cir. 2006), *quoting Florida v. Nixon*, 543 U.S. 175, 179, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004).

Bentz argues that, had his trial counsel objected, the answers elicited by leading questions would have been inadmissible, and therefore the state would have been unable to establish "the heart of the elements of the rape and sexual battery charges."  (Doc. No. 9 at 22-23.)  However, this overlooks the fact that even if his trial counsel had objected, and those objections had been sustained, the prosecutor would have been permitted to rephrase his questions, which would likely have elicited the same testimony.  *See, e.g., State v. Kleekamp*, No. 23533, 2010 WL 1731890 at *12 (Ohio Ct. App. Apr. 30, 2010) (the trial court's repeated sustaining of objections to leading questions and the prosecutor's rephrasing to elicit the same testimony did not deprive the defendant of a fair trial); *State v. Taylor,* No. 10AP-939, 2011 WL 2536455 at *8 (Ohio Ct. App. June 28, 2011) (same); *Oteng v. Warden, Ross Corr. Inst.*, No. 2:16-CV-1181, 2018 WL 2938359, at *13 (S.D. Ohio June

12, 2018), *report and recommendation adopted*, No. 2:16-CV-1181, 2018 WL 4214387 (S.D. Ohio Sept. 5, 2018).

Based upon this Court's review of the record, Bentz has failed to demonstrate that he was prejudiced by trial counsel's failure to object to the state's use of leading questions. He does not argue that the substance of the victim's testimony was inadmissible,[2] nor does he assert that his trial counsel failed to challenge the victim's testimony on cross-examination. The record shows his trial counsel engaged in lengthy and vigorous cross-examination of the victim, and exposed the limitations of her ability to recall the events of this night at issue. (Doc. No. 5-1, PageID# 634-61.) Therefore, Bentz's assertion that objecting to the questions at issue would have demonstrated "the prosecutor was having trouble eliciting a cogent recitation of the alleged victim's testimony," and this would have "badly hurt his case" is unpersuasive, because the record makes clear that Bentz's trial counsel made the victim's limited recollection evident on cross-examination. For example, under cross examination, the witness twice stated "I don't really remember anything from that night." (Doc. No. 5-1, PageID# 649.) In response to trial counsel's continued questioning, she later explained, "like I said, I was in and out the whole entire time. I blocked most of that night out. I tried to block all of it out but some stuck because it had to because I'm here today." (Doc. No. 5-1, PageID# 658.) It is hard to imagine how rephrasing the questions posed on direct examination would

---

[2]     Bentz compares his case to *United States v. Shoupe*, 548 F.2d 636 (6th Cir. 1977). However, that case involved questions that restated the contents of a problematic record of the witness' out-of-court statements which was admitted solely for the purpose of refreshing the witness' recollection and which failed to do so. Because in that case, the issue was "the recitation in the presence of the jury of extended unsworn remarks, attributed to a Government witness, which were allegedly recorded in an unverified document and which inculpate the defendant," it is not analogous to the case at hand. *United States v. Shoupe*, 548 F.2d at 641.

have elicited more persuasive testimony establishing that the victim's memory of the events giving rise to the case was limited.

Accordingly, and for all the reasons set forth above, it is recommended that the sole Ground of the Petition be denied.

### V. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DISMISSED.

Date:   May 7, 2021                    ___*s/ Jonathan Greenberg*_____
                                            Jonathan D. Greenberg
                                            United States Magistrate Judge

### <u>OBJECTIONS</u>

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**